# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

SANDRA MONTES-FLORES,        )
                                  )
                  Movant,      )
                                  )
         vs.                 )     2:12-cv-225-JMS-WGH
                                  )     2:11-cr-032-JMS-CMM-1
UNITED STATES OF AMERICA.   )

## Entry Granting Motion for Relief Pursuant to 28 U.S.C. § 2255

For the reasons explained in this Entry, the motion of Sandra Montes-Flores for relief pursuant to 28 U.S.C. § 2255 or, in the alternative, for a writ of error *coram nobis*,[1] must be **granted.**

### *Background*

Montes-Flores, a 30 year-old, came to the United States from her native Mexico with her brother and sister when she was eight years old. She grew up in California, graduated from high school in Long Beach and then attended college. She met her husband, Luis Enrique Flores, a United States citizen, in 2000. They married in 2003, and Montes-Flores adjusted her status to lawful permanent resident through him in 2009. They have a daughter who is six years old and is a natural-born United States citizen. Montes-Flores has been arrested one time, on September 5, 2010, in Greencastle, Indiana, as part of a traffic stop of a camper in which she was a passenger with two men, Pastor Leon-Limon and Raul Lopez-Montano.

On September 23, 2010, Montes-Flores was charged in No. 2:10-cr-21-JMS-CMM-2 with possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1). On June 9, 2011, Montes-Flores filed a petition

---

[1] *Coram nobis* is not available to the movant because she was under supervised release, a form of custody, at the time she filed her motion. *See Clarke v. United States,* 2013 WL 85935, *3 (7th Cir. 2013); *Virsnieks v. Smith,* 521 F.3d 707, 717-18 (7th Cir. 2008).

to enter a plea of guilty to the 21 U.S.C. § 841(a)(1) charge. A written plea agreement and a statement of stipulated facts were submitted to the court contemporaneously with the petition to enter a guilty plea.

On September 28, 2011, the date that Montes-Flores was scheduled to enter her plea of guilty (but prior to the change of plea hearing), a proffer meeting was conducted with respect to any "safety valve" consideration that might be given to Montes-Flores. At that proffer meeting, Montes-Flores became emotional, stated that she had known nothing of the cocaine, claimed the cocaine belonged to Pastor Limon and said that she had lied when she told law enforcement that Pastor Limon had nothing to do with the cocaine. Inasmuch as Montes-Flores was now denying her guilt to the 21 U.S.C. § 841(a)(1) charge, the scheduled change of plea hearing could not take place.

Concerned that the sentence to be imposed on the cocaine possession and distribution charge might (under the circumstances of the case with respect to Montes-Flores) be overly severe (even taking into account the effect, if she qualified, of the safety valve), the prosecutor entered into negotiations with Montes-Flores' counsel to permit Montes-Flores to plead guilty to a less serious offense, this being that she had made a materially false statement to law enforcement, one that was responsible for police releasing Pastor Limon from custody. 18 U.S.C. § 1001. Such offense carried a term of imprisonment of 0-5 years, and no statutory minimum term of imprisonment. An agreement was reached. An Information charging Montes-Flores with violating 18 U.S.C. § 1001 was filed in No. 2:11-cr-32-JMS-CMM-1.

On November 18, 2011, Montes-Flores filed a petition to enter a plea of guilty in No. 2:11-cr-32-JMS-CMM-1. A written plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(B) was submitted to the court that same date. The plea agreement provided that Montes-Flores would plead guilty to an Information charging her with making a material false statement, in violation of 18 U.S.C. § 1001(a)(2). The plea agreement further provided that in exchange for her plea of guilty to the Information, the United States would move at the time of Montes-Flores' sentencing to dismiss the 21 U.S.C. § 841(a)(1) charge in No. 2:10-cr-21-JMS-CMM-2.

On February 27, 2012, a hearing was held in No. 2:11-cr-32-JMS-CMM-1 on Montes-Flores' petition to enter a plea of guilty. At that hearing, the court determined that Montes-Flores agreed to waive indictment with respect to the material false statement charge. The court then explained to Montes-Flores the charge against her and explained her rights. Montes-Flores acknowledged her understanding of the proceedings, the charge against her and her rights. The court explained the terms of the plea agreement that Montes-Flores had entered into with the United States. Montes-Flores acknowledged her understanding of the plea agreement. The court concluded that Montes-Flores was fully capable of entering an

informed, knowing and voluntary plea. A factual basis for the plea was established. The court advised Montes-Flores that her conviction could have immigration consequences and Montes-Flores said she understood.

The court accepted the plea agreement and adjudged Montes-Flores guilty in No. 2:11-cr-32-JMS-CMM-1. Montes-Flores was sentenced to a term of 18 months of imprisonment, to be followed by one year of supervised release. Judgment was entered on the docket on March 2, 2012. The charge in No. 2:10-cr-21-JMS-CMM-2 was dismissed. No appeal was filed with respect to the disposition of the case. Montes-Flores filed her motion to vacate pursuant to ' 2255 in No. 2:11-cr-032-JMS-CMM-1 on August 1, 2012.

### *Discussion*

The plea agreement filed on November 18, 2011, contained Montes-Flores' waiver of certain rights. Paragraph 7 of the plea agreement stated that Montes-Flores "expressly waives her right to appeal the conviction and sentence imposed in this case on any grounds . . . [and additionally] Defendant expressly agrees not to contest, or seek to modify, her conviction or sentence or the manner in which it was determined in any proceeding, including, but not limited to, an action brought under Title 28, United States Code, Section 2255."

The Seventh Circuit has recognized the validity of waivers such as that included in the plea agreement in this case. "A defendant may validly waive both his right to a direct appeal and his right to collateral review under § 2255 as part of his plea agreement." *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). Such waivers are upheld and enforced with limited exceptions. The exceptions are cases in which:

> 1) the plea agreement was involuntary,
> 2) the district court relied on a constitutionally impermissible factor such as race,
> 3) the sentence exceeded the statutory maximum, or
> 4) the defendant claims ineffective assistance of counsel in relation to the negotiation of the plea agreement.

*Id.* "Some constitutional theories—particularly claims that the plea agreement was involuntary or the result of ineffective assistance of counsel—concern the validity of the plea agreement and thus would knock out the waiver of appeal along with the rest of the promises; all terms stand or fall together." *United States v. Behrman*, 235 F.3d 1049, 1051 (7th Cir. 2000).

Here Montes-Flores relies on two of the exceptions noted in *Keller* to argue that the waiver should not be enforced. First, she asserts she received ineffective assistance of counsel with respect to the negotiation of the plea. Second, she asserts

her plea was not knowing and therefore was involuntary.  Both claims relate to the alleged failure of trial counsel to adequately inform Montes-Flores of the deportation consequences of her plea.  Her specific contention is that if she had been informed that by pleading guilty to the § 1001 charge she would be subject to mandatory deportation, she would have rejected the plea and declared her intent to go to trial on the narcotics charges. The United States argues that Montes-Flores' ' 2255 motion is barred by the waiver of post-conviction relief rights in the written plea agreement and that the exceptions do not apply.

### 1.   Ineffective Assistance of Counsel

"In order to make out a claim for ineffective assistance of counsel in the context of a guilty plea, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial." *Bethel v. United States*, **458 F.3d 711, 716 (7th Cir. 2006)** (citing *Hill v. Lockhart*, **474 U.S. 52, 57–59 (1985))**; *see also Mulero v. Thompson,* **668 F.3d 529, 537 (7th Cir. 2012)**.

Here, Montes-Flores argues that counsel was ineffective in negotiating the plea agreement and by failing to give her accurate advice. The government argues that counsel satisfied his duty to provide adequate representation when he informed Montes-Flores that deportation was a possibility.

The plea agreement itself makes no reference to immigration consequences of pleading guilty to the § 1001 charge. Montes-Flores' attorney in No. 2:11-cr-32-JMS-CMM-1 was Bradford Kessler. In paragraph 17 of his affidavit, Kessler states the following:

> . . . As to the immigration consequences of pleading guilty to the Section 1001 charge, I told Ms. Montes-Flores that I am not an immigration attorney and could not tell her what the consequences would be. I told her that it was possible that she could face deportation but that it will be up to the immigration judge to decide. She asked if she should retain an immigration attorney. I told her that I had no advice to give, but that I did not believe immigration proceedings, if any, would begin until after the criminal case had concluded.

Kessler further states that although he understood that Montes-Flores faced the possibility of deportation, he did not realize or inform Montes-Flores at the time of the plea negotiations or sentencing that deportation was mandatory for the Section 1001 violation. Paragraph 19, *Kessler Affidavit.* Kessler also states that at the time of sentencing, he understood that Montes-Flores' 18-month sentence would be completed within a few weeks, and that she might thereafter be released and

allowed to go home. He called Montes-Flores' sister immediately following the sentencing hearing and told her that there was the possibility that Montes-Flores could be released to come home after she completed her sentence. Paragraph 20, *Kessler Affidavit*.

In 2010, the Supreme Court expanded the scope of effective assistance of counsel in holding that an attorney's performance is objectively unreasonable if the attorney does not "inform her client whether his plea carries a risk of deportation." *Padilla v. Kentucky,* 130 S. Ct. 1473, 1486 (2010). "When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 1483. "But when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Id.* "The severity of deportation - the equivalent of banishment or exile – only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Id.* at 1486 (internal quotation omitted).

"A criminal defendant who faces almost certain deportation is entitled to know more than that it is *possible* that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty." *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011) (citing *Padilla*, 130 S. Ct. at 1483). In *Bonilla,* the Ninth Circuit held that "[t]here can be little doubt that the district court abused its discretion in concluding that, because Bonilla was willing to enter a plea when he was at least aware of the possibility of deportation, his counsel's failure to advise him that he would almost certainly be deported did not constitute a fair and just reason for the withdrawal of his plea." *Id.* (internal quotation omitted).

8 U.S.C. § 1227(a) provides that any alien "**shall**, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens . . ." (emphasis added). The statute goes on to list various criminal offenses that render the alien "deportable," including "crimes of moral turpitude." 8 U.S.C. § 1227(a)(2)(A)(i). Specifically, the statute provides, "Any alien who is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable." 8 U.S.C. § 1227(a)(2)(A)(i).

While it may not be immediately clear from reading 8 U.S.C. § 1227(a)(2)(A)(i) whether Montes-Flores' conviction for false reporting under 18 U.S.C. § 1001 subjected her to automatic deportation, reading *Padilla* in conjunction with clear Seventh Circuit precedent affirmatively answers that question. The Supreme Court characterized Mr. Padilla's drug conviction under 8 U.S.C. § 1227(a)(2)(B) as "a deportable offense" subjecting him to "automatic

deportation." 130 S. Ct. at 1477 n.1, 1478; *see also* at 1483 (calling Padilla's deportation under the removal statute "presumptively mandatory"). Therefore, § 1227(a)(2) lists crimes that will subject an alien to presumptively automatic deportation. While crimes of "moral turpitude" are not specifically defined in the statute, *id.* at 1479, the Seventh Circuit has repeatedly held that "[t]here can be no question that a violation of section 1001 is a crime involving moral turpitude." *Ghani v. Holder,* 557 F.3d 836, 841 (7th Cir. 2009); *see also Benaouicha v. Holder,* 600 F.3d 795, 797 (7th Cir. 2010) (alien who committed § 1001 crime of moral turpitude was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)). *Padilla*, *Ghani*, and *Benaouicha* were all issued years before Montes-Flores pled guilty in February 2012. Therefore, the deportation consequences of a conviction under § 1001 were "truly clear" and the duty of Montes-Flores' counsel to give correct legal advice was "equally clear." *Padilla*, 130 S. Ct. at 1483.

Counsel failed to meet that duty. While confined awaiting resolution of the charge for which she had been indicted, Montes-Flores relied on her attorney's advice. In this case, the deportation consequences were clear, but Montes-Flores' counsel did not know that. He told her he could not tell her what the consequences would be and then failed to make his own inquiry and find the answer. Equally troubling is that when Montes-Flores asked whether she should retain an immigration attorney, he told her that he had "no advice to give, but that [he] did not believe immigration proceedings, if any, would begin until after the criminal case had concluded." Paragraph 17, *Kessler Affidavit*. But when Montes-Flores entered into the plea agreement based on erroneous advice and that plea agreement was later accepted, the damage was done because she became subject to presumptively automatic deportation under § 1227. Further demonstrating his own misunderstanding of the law, counsel gave Montes-Flores and her family the impression that Montes-Flores would be released soon and then able to go home. Under *Strickland* and *Padilla,* counsel's failure to inform Montes-Flores that a conviction under § 1001 would result in presumptively mandatory deportation was objectively unreasonable.

As for the prejudice element of *Strickland*, the government asserts that there was never any possibility that Montes-Flores would go to trial on the § 1001 charge. Instead, the government would have proceeded to trial on the § 841 drug possession and distribution charge. Accepting the government's premise, Montes-Flores states in her affidavit that if she had known that pleading guilty to the § 1001 charge would make her mandatorily deportable, she would not have agreed to plead guilty to that charge and, instead, would have taken the risk of going to trial on the drug charge.  In light of her failed safety valve proffer, Montes-Flores was facing a statutory minimum 10-year sentence, and deportation, regardless of whether she pled guilty or was convicted after a trial.  That factor weighs in favor of going her to trial, especially considering that her young daughter and husband both reside in the United States.  *Padilla* recognized that "preserving the client's right to remain in

the United States may be more important to the client than any potential jail sentence." 130 S. Ct. at 1483.  This factor, combined with Montes-Flores' professed innocence and testimony from her former co-defendant Lopez-Montano that Pastor Limon controlled every aspect of the drug offense, leads the Court to conclude that Montes-Flores has shown that there is a reasonable probability that, but for counsel's error, she would not have pled guilty and would have insisted on going to trial on the drug charge.

Finally, the prejudice Montes-Flores' suffered from her counsel's failure to inform Montes-Flores that a conviction under § 1001 would result in presumptively mandatory deportation is not alleviated by the Court's colloquy with her at the plea hearing.  Before accepting Montes-Flores' guilty plea, the Court asked her

> The Court:   Also, the fact of this conviction may have consequences to your residency status; do you understand that?

> The Defendant:  Yes, Your Honor.

> The Court:   And do you understand that it may result in penalties up to and including your deportation?

> The Defendant:  Yes, Your Honor.

[Dkt. 2-2 at 17-18.] Although these questions signaled to Montes-Flores that deportation was a possible result of her conviction, they did not indicate that her conviction would presumptively render her automatically deportable. And the Court was not aware of the erroneous and incomplete advice Montes-Flores had received from her counsel regarding the residency consequences (or his perceived lack thereof) from her conviction. For these reasons, the Court concludes that Montes-Flores was prejudiced by counsel's failure to inform Montes-Flores that a conviction under § 1001 would result in presumptively mandatory deportation.

  2.  Involuntary plea.

Because Montes-Flores has shown that she received constitutionally defective counsel in the form of erroneous and incomplete advice as to the deportation consequences of her plea, and that there was a reasonable probability that she was prejudiced, the Court concludes that, under the circumstances of this case, Montes-Flores did not make a knowing and voluntary guilty plea.  Accordingly, Montes-Flores' ' 2255 challenge is not barred by the waiver provision in the plea agreement.  *See Behrman*, 235 F.3d at 1051 ("Some constitutional theories—particularly claims that the plea agreement was involuntary or the result of ineffective assistance of counsel—concern the validity of the plea agreement and thus would knock out the waiver of appeal along with the rest of the promises; all terms stand or fall together.").  Accordingly, she is entitled to relief pursuant to § 2255.

*Conclusion*

The foregoing shows that Montes-Flores is entitled to relief pursuant to 28 U.S.C. ' 2255. The motion for relief pursuant to ' 2255 is therefore **granted.**

To avoid this situation in the future, defense counsel, counsel for the government, and the Court can all benefit from learning the valuable lessons of this case. Defense counsel must read *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) and become familiar with the circumstances under which 8 U.S.C. § 1227 renders a convicted defendant presumptively deportable. As *Padilla* holds, when the deportation consequences are truly clear, the duty of counsel to give correct advice is equally clear. 130 S. Ct. at 1483.

The lesson for counsel for the Government is to include language in plea agreements resulting in deportable offenses under § 1227 to make it clear that the defendant will be likely be subject to automatic deportation as a result of the resulting conviction. In so doing, it will foreclose any claim that a plea is not knowing and voluntary. For an example of such language, *see United States v. Flores-de la Rosa*, Cause No. 2:12-cr-163-JMS-DML-1, dkt. 23 at 3:[2]

> 4. **Potential Immigration Consequences of Guilty Plea:** The defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. The defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States. The defendant further understands that removal from the United States could hinder his future ability, if any, to lawfully immigrate.
>
> 5. **Consent to Removal Upon Completion of Sentence of Imprisonment:** The defendant consents to removal from the United States following completion of any sentence of imprisonment and waives any and all rights relating to any and all forms of relief from removal or exclusion, and to abandon any pending

---

[2] Even this example uses the associated phrase "removable offense" rather than the Supreme Court's term "deportable offenses." Without an explanation, this similar phrase might well be avoided.

applications for such relief and to cooperate with the Department of Homeland Security during removal proceedings.

And finally, a lesson the Court can learn is that the colloquy provided by the Court's Benchbook may need to be enhanced if a defendant is pleading guilty to a crime that will result in a presumptively deportable conviction. *See Benchbook for U.S. District Court Judges* at 75 ("Do you understand that your plea of guilty [to a felony offense] may affect your residency or your status with the immigration authorities?), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/Benchbk5.pdf/$file/Benchbk5.pdf. Counsel for the Government and defense counsel would be well served to alert the Court when a non-citizen is pleading guilty to a crime that will subject him to the presumptively automatic deportation requirements of 8 U.S.C. § 1227 so that the plea colloquy can be altered accordingly.

Judgment consistent with this Entry shall now issue.

This Entry shall also be entered on the docket in the underlying criminal action, No. 2:11-cr-032-JMS-CMM-1, and in No. 2:10-cr-00021-JMS-CMM-2.

The decision in this *Entry* and the action in the accompanying *Judgment* prevents the United States government from deporting the movant. Counsel for the United States is responsible for notifying any appropriate authorities of this ruling. Counsel for the movant should likewise notify pertinent immigration authorities of this ruling.

IT IS SO ORDERED.

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Date: 02/04/2013

Note to Clerk: Processing this document requires actions in addition to docketing and distribution.

Distribution:

Electronically Registered Counsel